IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSALL DIVISION

| | | |
|---|---|---|
| UNILOC 2017, LLC,<br>Plaintiff, | §<br>§<br>§ | CIVIL ACTION NOS. 2:18-cv-00491 |
| v. | §<br>§ | CIVIL ACTION NOS. 2:18-cv-00492<br>CIVIL ACTION NOS. 2:18-cv-00493 |
| GOOGLE LLC.,<br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NOS. 2:18-cv-00496<br>CIVIL ACTION NOS. 2:18-cv-00497<br>CIVIL ACTION NOS. 2:18-cv-00499<br>CIVIL ACTION NOS. 2:18-cv-00501<br>CIVIL ACTION NOS. 2:18-cv-00502<br>CIVIL ACTION NOS. 2:18-cv-00503<br>CIVIL ACTION NOS. 2:18-cv-00504<br>CIVIL ACTION NOS. 2:18-cv-00548<br>CIVIL ACTION NOS. 2:18-cv-00550<br>CIVIL ACTION NOS. 2:18-cv-00551<br>CIVIL ACTION NOS. 2:18-cv-00552<br>CIVIL ACTION NOS. 2:18-cv-00553 |

**JURY TRIAL DEMANDED**

**EMERGENCY OPPOSED MOTION TO MODIFY DISCOVERY
DEADLINES AND FOR A PROTECTIVE ORDER TO FORBID DEPOSITIONS
FOR A LIMITED TIME PERIOD TO AVOID COVID-19**

**I.   INTRODUCTION AND FACTUAL BACKGROUND**

The COVID-19 pandemic is a global health crisis without historical precedent. The Court has already addressed COVID-19 in its Standing Order based on the situation at the time. *See* Standing Order Regarding the Novel Coronavirus (COVID-19) (Mar. 3, 2020). The COVID-19 situation is changing rapidly and continues to change. The virus has now spread to 49 states with 3,155 cases in the U.S. reported on the afternoon of March 15 – up from 122 cases reported on March 3, 2020. In just a matter of weeks, communities previously thought to be unaffected have

reversed course and taken steps to limit contact. The following briefly summarizes significant events since the Court issued its Standing Order and facts relevant to the facts of this case:

- On March 3, 2020, CNN reported 122 cases of COVID-19 in 13 states – including California.[1]

- On March 4, 2020, California Governor Newsom declared a state of emergency in California due to COVID-19.[2]

- On March 9, 2020, Santa Clara County issued a directive for employees to "[s]uspend all nonessential employee travel" and to "[m]inimize the number of employees working within arm's length of one another."[3] Google's global headquarters is in Mountain View, California, which is part of Santa Clara County.

- On March 10, 2020, Google's CEO, Sundar Pichai, tweeted "Contributing to social distancing if you are able to, helps the overall community spread and most importantly, will help offset the peak loads through critical healthcare systems and also saves it for people in need. (based on expert advice). Please contribute if you are able to."[4]

- On March 11, 2020, WHO declared that COVID-19 had risen to the level of a pandemic.[5]

---

[1] *See* March 3 Coronavirus News, CNN, https://www.cnn.com/asia/live-news/coronavirus-outbreak-03-03-20-intl-hnk/h_6a92291e73a97284441ffdb2582cf541 (Mar. 3, 2020) (Ex. A to Etheridge Decl.).

[2] *See* Governor Newsom Declares State of Emergency to Help State Prepare for Broader Spread of COVID-19, Office of Governor Gavin Newsom, https://www.gov.ca.gov/2020/03/04/governor-newsom-declares-state-of-emergency-to-help-state-prepare-for-broader-spread-of-covid-19/ (Mar. 4, 2020) (Ex. B to Etheridge Decl.).

[3] *See* Updated March 9, 2020: Order Requiring Cancelation of Mass Gatherings of More than 1,000 Persons and New Recommendations from the County of Santa Clara Public Health Department to Protect Residents of the County from Coronavirus Disease 2019 (COVID-19), Santa Clara County Public Health (Mar. 9, 2020) (Ex. C to Etheridge Decl.).

[4] *See* Sundar Pichai (@sundarpichair), https://twitter.com/sundarpichai/status/1237499299589582848?s=20 (Mar. 10, 2020) (Ex. D to Etheridge Decl.).

[5] *See* WHO Director-General's opening remarks at the media briefing on COVID-19 - 11 March 2020, World Health Organization, https://www.who.int/dg/speeches/detail/who-director-generals-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020 (Mar. 11, 2020) (Ex. E to Etheridge Decl.)

- On March 11, 2020, the White House Coronavirus Task Force specifically called out Santa Clara County, California as an area of widespread transmission of COVID-19.[6]

- On March 12, 2020, the cites of Mountain View, California and Palo Alto, California announced emergencies over the spread of COVID-19.[7]

- On March 12, 2020, Google announced that all of its North American employees should work from home until April 10. Other technology companies—including Apple, Amazon, Facebook, Microsoft, and IBM—are reportedly similarly encouraging their employees to work from home.[8]

- On March 13, 2020, President Trump declared a national emergency concerning COVID-19.[9] In his remarks, President Trump noted that "[f]or the areas where the virus is spreading, the CDC is advising communities to … cancel work-sponsored travel."[10]

- Hours after President Trump's March 13 emergency declaration, the U.S. military has halted all domestic travel for all service members, civilian employees, and their

---

[6] *See* White House Coronavirus Task Force Announces Community Mitigation Strategies For Seattle, Santa Clara, The White House, https://www.whitehouse.gov/briefings-statements/white-house-coronavirus-task-force-announces-community-mitigation-strategies-seattle-santa-clara/ (Mar. 11, 2020) (Ex. F to Etheridge Decl.).

[7] *See* City of Mountain View Declares Local Emergency in Response to COVID-19 Pandemic, City of Mountain View (Mar. 12, 2020) (Ex. G to Etheridge Decl.); City Enhances COVID-19 Public Safety Response, Implements Service Changes and Proclaims Emergency, City of Palo Alto, https://www.cityofpaloalto.org/news/displaynews.asp?NewsID=4852 (Mar. 12, 2020) (Ex. H to Etheridge Decl.).

[8] *See* Clare Duffy, Big tech firms ramp up remote working orders to prevent coronavirus spread, CNN Business, https://www.cnn.com/2020/03/10/tech/google-work-from-home-coronavirus/index.html (Mar. 10, 2020) (Ex. I to Etheridge Decl.).

[9] *See* Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Conference, The White House, https://www.whitehouse.gov/briefings-statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-press-conference-3/ (Ex. J to Etheridge Decl.).

[10] *See id.* Uniloc has not moved under Paragraph 1(c) of this Court's Standing Order as it is unclear if President Trump's remarks were restating "guidance set forth by the Centers for Disease Control." *See* Standing Order, ¶1(c). In addition, while the chances of attorneys, parties, representatives or witnesses may significantly increase the chances of coming into contact with individuals infected or exposed to COVID-19, Uniloc does not contend that a specific individual has been infected or exposed. *Id.*, ¶1(d).

families to help combat the COVID-19 pandemic. The military has carved out narrow exceptions for just a handful of "compelling cases"—including travel that's deemed necessary for medical treatment, a particular mission, or humanitarian reasons.[11]

- On March 14, 2020, when asked about whether all Americans follow the same advice as the military ban on domestic travel, President Trump said "Well, if you don't have to travel, I wouldn't do it.  If you don't have to travel — we want this thing to end.  We don't want a lot of people getting infected. We want it to end, and end as quickly as possible." In a follow up question on whether the Administration is considering domestic travel ban, President Trump said "yes," and referred to the ban being directed "[s]pecifically from certain areas [in the United States]."[12]

- On March 14, 2020, Uniloc implemented a policy "requiring all staff to work from home, in order to mitigate the potential spread of COVID-19."[13]

- Uniloc, its outside counsel, and experts have experienced multi-week school closings – necessitating unexpected family obligations.[14]

- On March 14, 2020, Marshall Independent School District closed to students from March 16 to March 20.[15]

---

[11] See Memorandum Re: Stop Movement for All Domestic Travel for DoD Components in Response to Coronavirus Disease 2019 (Mar. 13, 2020) (Ex. M to Etheridge Decl.).

[12] See Remarks by President Trump, Vice President Pence, and Members of the Coronavirus Task Force in Press Briefing, https://www.whitehouse.gov/briefings-statements/remarks-president-trump-vice-president-pence-members-coronavirus-task-force-press-briefing/ (Mar. 14, 2020) (Ex. N to Etheridge Decl.).

[13] Uniloc's policy reads in its entirety: "In light of the growing national concerns and precautions many organizations are taking pertaining to the spread of coronavirus (COVID-19) and in response to and compliance with actions taken by state, local and Federal officials, Uniloc is requiring all staff to work from home, in order to mitigate the potential spread of COVID-19.  Additionally, the rapid spread of COVID-19 necessitates immediate implementation of travel restrictions for the companies domestic and international plans. These restrictions are necessary to preserve the health and welfare of our employees and contractors, their families and the local communities where we live. God bless everyone." See Etheridge Decl., ¶25.

[14] Etheridge Decl., ¶21.

[15] See Marshall ISD extends Spring Break over coronavirus concerns, KSLA 12 News, https://www.ksla.com/2020/03/14/marshall-isd-extends-spring-break-over-coronavirus-concerns/

- As last updated on March 15, 2020, the San Jose Mercury News reported that "[in] a stunning development that dramatically shakes up the criminal justice system, several Bay Area courts are either closing, postponing trials or sharply scaling back legal proceedings to help stem the spread of coronavirus," which includes "San Mateo County Superior Court request[ing] an emergency order from the chief justice to suspend all civil and criminal trial proceedings starting next Wednesday through April 14th."[16]

- On March 15, 2020 at 2:40 p.m., CNN reported that U.S. cases grew to 3,130 cases in 49 states with 62 deaths;[17] CNN reported that such a number grew to 3,155 cases at 3:43 p.m.

- On March 15, 2020, Dr. Anthony Fauci, director of the National Institute of Allergy and Infectious Diseases, told NBC's :Meet the Press" that Americans "should be prepared that they're going to have to hunker down significantly more than we as a country are doing: to fight the growing COVID-19 outbreak.[18]

- On March 16, 2020, the United States Supreme Court postponed its March argument sessions. The Court noted that "in light of public health concerns is not unprecedented. The Court postponed scheduled arguments for October 1918 in response to the Spanish flu epidemic. The Court also shortened its argument

---

(Mar. 14, 2020) (Ex. O to Etheridge Decl.). The City of Marshall also suspended "all events in city facilities and parks beginning March 16, 2020, and lasting until April 15, 2020. This will include events at facilities." See BREAKING: Marshall suspends events as safeguard to COVID-19, The Marshall News Messenger, https://www.marshallnewsmessenger.com/general/breaking-marshall-suspends-events-as-safeguard-to-covid/article_4cdde93c-654a-11ea-b1be-fb9cce3f3e7a.html (Mar. 13, 2020) (Ex. P to Etheridge Decl.).

[16] See Robert Salonga, Coronavirus: Bay Area courts curtail proceedings amid COVID-19 pandemic, The Mercury News, https://www.mercurynews.com/2020/03/13/coronavirus-bay-area-court-announces-closures-in-wake-of-covid-19-pandemic/ (Mar. 13, 2020; updated Mar. 15, 2020 at 5:36 am) (Ex. Q to Etheridge Decl.).

[17] See The CDC recommends organizers cancel or postpone events with 50 people or more for 8 weeks, CNN, https://www.cnn.com/2020/03/15/health/us-coronavirus-sunday-updates/index.html (Mar. 15, 2020, updated at 10:36 pm ET) (Ex. R to Etheridge Decl.)

[18] See Fauci: Americans are 'going to have to hunker down significantly more' to fight coronavirus, NBC News, https://www.nbcnews.com/politics/meet-the-press/fauci-americans-are-going-have-hunker-down-significantly-more-fight-n1159381 (Mar. 15, 2020) (Ex. S to Etheridge Decl.)

- calendars in August 1793 and August 1798 in response to yellow fever outbreaks."[19]

- On March 16, 2020, President Trump avoid gathering in groups of more than 10 people and avoid discretionary travel. When asked if he intended to impose a nationwide quarantine or curfew, President Trump indicated that he is not considering anything at the nationwide level but that "we may look at certain areas."[20]

- On March 16, 2020, this Court issued General Order 20-03 noting its concern "with the health and safety of the public, Court employees, staff of other entities with whom Court personnel interact, litigants, counsel, interpreters, law enforcement officials, and jurors, who must work in close quarters to hear evidence and to deliberate" and "taking into consideration matters of public health, while reducing the size of public gatherings and the need for travel."[21]

Given these developments at all levels of government and Google's own stated policies and for the reasons further noted in this Emergency Motion, Uniloc 2017, LLC ("Uniloc") respectfully moves for (i) extending the deadline for the close of fact discovery and opening expert reports for 60 days and (ii) a protective order prohibiting the parties from taking any depositions within the first 30 days of the 60-day period. Pursuant to Local Rule CV-7(l), without such relief the taking and defending of remaining depositions would result in imminent, irreparable harm to the community at large due to the incremental exposure resulting from the depositions. Given these

---

[19] Press Release, Supreme Court of the United States, https://www.supremecourt.gov/publicinfo/press/pressreleases/pr_03-16-20 (Mar. 16, 2020) (Ex. T to Etheridge Decl.)

[20] Live updates: Coronavirus deaths pass 6,500 worldwide, CNN, https://www.cnn.com/world/live-news/coronavirus-outbreak-03-16-20-intl-hnk/ (Mar. 16, 2020) (Ex. U to Etheridge Decl.).

[21] General Order 20-03, Court Operations Under Exigent Circumstances Created by the COVID-19 Pandemic (E.D. Tex. Mar. 16, 2020).

concerns and the remaining time to take depositions under the existing schedule, a motion under Local Rule CV-7(e) would be inadequate.

## II. PROCEDURAL BACKGROUND

The Court has set March 30 as the date of close of fact discovery and the date for opening expert reports. *E.g.*, -491 Case, Dkt. 101 at 3. The parties have already taken a substantial number of depositions, but additional depositions need to be taken before the close of fact discovery. For instance, Uniloc has taken approximately 18 depositions in the above-listed actions. Etheridge Decl., ¶22. But for issues arising as a direct result of COVID-19, Uniloc would have had adequate time to take and defend the remaining depositions. Google's outside counsel has made similar representations. Etheridge Decl., ¶23.

Uniloc served a 30(b)(6) deposition notice on Google. Etheridge Decl., ¶24. To date, Google has offered to produce one 30(b)(6) witness in Palo Alto, California. Letter from M. Jones to J. Etheridge of Mar. 12, 2020 (Ex. K to Etheridge Decl.). For the remainder, Google has yet to identify any witnesses, and the parties are currently negotiating location of these depositions. Etheridge Decl., ¶24. Uniloc proposed Plano, Texas. Letter from M. Jones to J. Etheridge of Mar. 12, 2020 (Ex. K to Etheridge Decl.). Google's counsel stated that "[r]ather than having all of our witnesses and counsel travel to Plano, the general equities weigh in favor of Uniloc's outside counsel traveling to California, where Google is headquartered and the witnesses are located." *Id.*

Google has also noticed multiple 30(b)(6) topics and individual witnesses regarding issues they wish to address. Prior to the rapid evolving issues concerning COVID-19, the parties had been negotiating the time and location of these witnesses. However, the concerns over community recommendations to simply "stay home" amidst the rapidly spreading COVID-19 have curtailed

such discussions. Another overarching concern is the possibility of virus spread for asymptomatic individuals.[22]

Depositions of third-party witnesses had also been noticed for the latter part of March; however, the issues concerning COVID-19 have also been injected into such discussions.

### III.  ARGUMENT

As part of its broader community responsibility in minimizing the spread of COVID-19, Uniloc seeks to (i) extending the deadline for the close of fact discovery and opening expert reports for 60 days and (ii) a protective order prohibiting the parties from taking any depositions within the first 30 days of that 60-day period.[23] The prohibition against deposition is necessary to prevent community spread of COVID-19, and particularly prevent individuals from traveling to the community of Santa Clara County, California, which has been recognized at all levels of government as being a high-risk area of infection. The remaining 30-day period would allow the parties to take depositions in an orderly fashion. There are multiple interrelated reasons for granting the relief Uniloc seeks.

### A.  Uniloc's Proposal Would Comply with Specific Government Directives Specifically Directed to Geographic Area Where Community Spread is High

Minimizing unnecessary travel will protect the community at large, especially when Google is asking for many of the depositions to be in Santa Clara County, an area identified as

---

[22] Infected people without symptoms might be driving the spread of coronavirus more than we realized, CNN, https://www.cnn.com/2020/03/14/health/coronavirus-asymptomatic-spread/index.html (Mar. 16, 2020) (Ex. V to Etheridge Decl.)

[23] To protect a party or person from "oppression," the Court may, for good cause, issue a protective order specifying the "time and place" of discovery, including a deposition. Fed. R. Civ. P. 26(c)(1)(B).

higher-risk with respect to COVID-19. As noted by Google's CEO, "social distancing … helps the overall community spread and most importantly, will help offset the peak loads through critical healthcare systems and also saves it for people in need. (based on expert advice)." This effect is often referred to by CDC officials as "flatten the curve," which is graphically reproduced below:[24]



The curve on the left shows the spike in cases that could occur if communities fail to take preventive measures, such as restricting work-related travel. In that scenario, a huge volume of cases overwhelms the health-care system, and there are insufficient health care resources. The curve on the right shows the effect of preventative measures: the number of cases is lower and is spread out over a longer period.

      To address these and other concerns, the White House has encouraged companies based in communities where the virus is spreading to "cancel work-sponsored travel." Santa Clara County—the home of Google's global headquarters—similarly directed employers to "[s]uspend all nonessential employee travel" and went further to "[m]inimize the number of employees

---

[24] <u>Flattening A Pandemic's Curve: Why Staying Home Now Can Save Lives</u>, NPR, https://www.npr.org/sections/health-shots/2020/03/13/815502262/flattening-a-pandemics-curve-why-staying-home-now-can-save-lives (Mar. 13, 2020) (Ex. L to Etheridge Decl.).

working within arm's length of one another." With respect to domestic travel, the CDC has warned that individuals traveling to areas where COVID-19 is spreading will be at "higher risk" and asked individuals to consider to "delay or cancel" their travel plans to such areas. Mostly recently, on March 13, 2020, President Trump went farther by asking that employers cancel all work-related travel to areas where COVID-19 is spreading. Just before this motion was filed, the San Francisco Chronicle noted that six Bay area counties (including Santa Clara) announced that all individuals should "shelter in place," making it one of the "strictest measure of its kind in the country."[25] Accordingly, authorities at from all levels of government—from the President of the United States to the county level—are restricting non-essential travel and meetings.

And Google itself has imposed even a broader ban, asking for not only its Santa Clara-based employees but all North American employees to work from home until April 10. The same logic that applies to Google employees would apply equally to the party's expert witnesses, counsel, and experts, third-party witnesses and their counsel, court reporters, and videographers. Indeed, some of the depositions in this case have been attended by as many as eight individuals, some of whom had traveled from across the United States. Subjecting these individuals to both the work-related travel and being in close proximity to others, will only contribute to pushing the curve above the health care capacity line. At the individual level, it would also subject these individuals and their friends and family to an increased chance of contracting COVID-19.[26]

---

[25] *See* https://www.sfchronicle.com/local-politics/article/Bay-Area-must-shelter-in-place-Only-15135014.php.
[26] To be clear, Uniloc does not presently seek to restrict how this Court conducts its operations, and Uniloc, currently, is not objecting to appearing telephonically or in person at hearings and conferences before this Court, including any hearings for this Motion.

### B. A Slight Delay Will Not Disrupt the Overall Administration of All of the Uniloc-Google Cases Pending Before this Court

While Uniloc respects the trial dates set by this Court in these matters, there is nothing essential about taking the depositions by the close of March. As the Court will recall, this Court initially set all the cases between the parties on a parallel track with trials in August of this year. But the Court has stayed five of the cases (those not listed in the captions above) in view of the *In re Google* decision by the Federal Circuit. Given the length of the stay to date, it is not realistic to expect the presently-stayed cases to still be tried in August. And given that certain discovery issues (such as Uniloc's standing) are common across both the stayed and un-stayed case, it would be more efficient to align all the cases under a common or at least similarly-tracked schedule. For its part, Google has all but conceded that they are in no hurry to try these cases. In multiple cases, Google has moved to stay a case pending an IPR proceeding.

Moreover, Uniloc's proposal would not burden the Court or the parties. The same depositions would be taken, just shifted in time to a less-risky period with respect to community spread. In the meet-and-confer process leading up to this Emergency Motion, Google has expressed a concern that the additional time period in discovery not be used to propound additional discovery. Uniloc would agree to a restriction for both parties to not propound any additional written discovery—*i.e.*, interrogatories and requests for admission—after the current close of fact discovery on March 30. During the meet-and-confer, Google was unable to identify any prejudice other than a general concern that it wants to move these cases quickly and decrease costs. But granting this motion would allow a resynchronization of the *Wave II* Cases (Case Nos. -548, -550, -551, -552, and -553) with the *Wave I* Cases (the other above-listed docket numbers above). For instance, without granting this motion, a witness will be deposed once now and again for *Wave I*

Cases. Granting the motion would also allow the Court to consider the implications of recent venue rulings by the Federal Circuit.

### C. Alternative Technologies or Individuals Are Not Feasible

Uniloc's proposed solution is also the only feasible alternative.

With respect to alternatives to "in person" depositions, taking a deposition remotely is envisioned by but only when the parties stipulate or the Court does so on "motion order." Fed. R. Civ. P. 30(b)(4). Neither has occurred here. Uniloc does not agree to a remote (i.e., videoconference or telephonic deposition). And Google has not moved or indicated that it would move for such depositions to proceed. Moreover, taking a deposition by videoconference will prejudice Uniloc as it will be insufficient to allow Uniloc's attorneys to test the witness's credibility and provide the large number and volume of documents that are often typical in patent cases. *See, e.g., Music Group Macao Commercial Offshore Ltd. v. Foote*, 14-CV-3078-JSC, 2015 WL 13423886, at *3 (N.D. Cal. Aug. 11, 2015) (declining to allow deposition via videoconference as impractical based on the inability to test credibility and copious amount of deposition document); *United States v. Approximately $53,378 in U.S. Currency*, No. C08-5023 MMC (BZ), 2010 WL 4347889, at *1 (N.D. Cal. Oct. 27, 2010) (denying request for video deposition as insufficient to examine deponent's credibility and "impracticable" given large number of documents at issue); 3 Business and Commercial Litigation in Federal Courts § 24:13 (4th ed. 2016) ("Further, experienced questioners find that witnesses (and particularly adverse or hostile witnesses) will more readily yield admissions to a live questioner.").

Telephonic depositions suffer the same deficiencies. Even worse. *See United States v. One Gulfstream G-V Jet Aircraft Displaying Tail Number VPCES*, 304 F.R.D. 10, 17 n.4 (D.D.C. 2014)

(noting that "telephonic depositions are disfavored because it is impossible to see the witness's demeanor, watch what documents the witness is reviewing, or monitor who else the witness is talking with"); *Shockey v. Huhtamaki, Inc.*, 280 F.R.D. 598, 602 ("Telephone depositions may also make it more difficult when the testimony requires the deponent to examine numerous, lengthy, or complex documents."); *Seuthe v. Renwal Products*, 38 F.R.D. 323, 324 (S.D.N.Y. 1965) ((noting that where the facts are complex and involve matters within the knowledge of the adverse party "opposing counsel is usually entitled to ascertain the facts directly and face to face to minimize any attempt to be evasive or recalcitrant."). *Arrocha v. McAuliffe*, 109 F.R.D. 397, 402 (D.D.C. 1986) (holding deposition in location where opposing counsel could not evaluate the witnesses' demeanor, facial reactions, and expressions, and could not detect every nuance and meaning of the witnesses' responses to questions, was unfair); *United States v. Approximately $57,378 in U.S. Currency*, 2010 WL 4347889, * 1-2 (N.D. Cal. Oct. 27, 2010) (claimant who lived in Atlanta required to travel to San Francisco for a live deposition; because claimant's credibility was at issue, neither a telephone nor video conference was suitable, and it was "more just" to require the claimant to travel because, by filing a claim, she had submitted to the jurisdiction of the court where the case was pending, and her assertion that she owned the defendant currency indicated that she had disposal assets available to pay for her travel).

      Courts have found that remote depositions are particularly inappropriate when the deponent is a party. *Huddleston v. Bowling Green Inn of Pensacola,* 333 F.R.D. 581, 586 (N.D. Fla. 2019) (denying deposition by videoconference or telephone where the deponent was a party and noting that remote depositions "preclude in-person confrontation and the assessment of the deponent's

demeanor, affect, non-verbal responses, and facial expressions."). Here, the witnesses Uniloc seeks include 30(b)(6) designees of Google.

The insufficiency is only magnified when several of the Google depositions witnesses will likely reside in Northern California, outside of the Court's ability to compel testimony at trial. *See* Fed. R. Civ. P. 45(c)(1). Thus, the deposition will be the only opportunity to challenge many of Google's 30(b)(6) key trial witnesses. In addition, preparing Uniloc's own witnesses are also in remote locations. Attempting to work with these witnesses remotely cannot be practically be done remotely, especially when the subject matter of the depositions implicates the high-stakes issues in these actions.

With respect to deposition location, even if Google to produce its witnesses in Plano, it would not address the underlying health concerns. Holding the depositions in Plano, Texas would be less burdensome to Uniloc's counsel—they would not be subjected to unnecessary travel to and attendance in a deposition in Santa Clara county. But bringing Google witnesses and attorneys from Santa Clara County and elsewhere would bring individuals from a high-risk area into this District. The bottom line is that any travel in the short-term that is unnecessary is against the government policies and guidelines noted above. Indeed, having the Google witnesses travel to Plano would violate Google's own internal policy.

For all these reasons, the only feasible solution is granting Uniloc's motion.

## IV. CONCLUSION

The Court should grant Uniloc's motion to (i) extending the deadline for the close of fact discovery and opening expert reports for 60 days and (ii) a protective order prohibiting the parties from taking any depositions within the first 30 days of the 60-day period.

|  |  |
|---|---|
| Date:  March 16, 2020 | */s/ Ryan Loveless* |
|  | James L. Etheridge |
|  | Texas Bar No. 24059147 |
|  | Ryan S. Loveless |
|  | Texas Bar No. 24036997 |
|  | Brett A. Mangrum |
|  | Texas Bar No. 24065671 |
|  | Travis L. Richins |
|  | Texas Bar No. 24061296 |
|  | Jeff Huang |
|  | Brian M. Koide |
|  | Etheridge Law Group, PLLC |
|  | 2600 E. Southlake Blvd., Suite 120 / 324 |
|  | Southlake, TX  76092 |
|  | Tel.:  (817) 470-7249 |
|  | Fax:  (817) 887-5950 |
|  | Jim@EtheridgeLaw.com |
|  | Ryan@EtheridgeLaw.com |
|  | Brett@EtheridgeLaw.com |
|  | Travis@EtheridgeLaw.com |
|  | JHuang@EtheridgeLaw.com |
|  | Brian@EtheridgeLaw.com |

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that on March 16, 2020, the foregoing document was served upon all counsel of record for the Defendant via the Court's electronic filing system.

*/s/ Ryan Loveless*
Ryan Loveless

**CERTIFICATE OF CONFERENCE**

      Pursuant to Local Rules CV-7(h) and (i), counsel for the parties met and conferred with counsel on March 16, 2020 in a good faith attempt to resolve the matters raised by this Motion. The parties were unable to reach agreement. Google LLC indicated it opposes the relief requested by this Motion. Thus, these discussions have conclusively ended in an impasse and leave an open issue for the Court to resolve.

      */s/ Ryan Loveless*
      Ryan Loveless