**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| UNILOC 2017 LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Case No. 2:18-cv-00504-JRG-RSP |
| | § | |
| GOOGLE LLC, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM ORDER</u>

Before the Court is the Motion to Transfer Venue to the Northern District of California under 28 U.S.C. § 1404 ("Motion"), filed by Defendant Google LLC.[1] Dkt. No. 94. After consideration, the Court **GRANTS** Google's Motion. It is therefore **ORDERED** that the case be transferred to the Northern District of California.

## I.      BACKGROUND

Plaintiff Uniloc 2017 LLC ("Uniloc") is a Delaware limited liability company with offices in Tyler, Texas, and Newport Beach, California. Dkt. No. 1 at 1. Defendant Google LLC ("Google") is a California corporation with its principal place of business in the Northern District of California. On November 17, 2018, Uniloc filed multiple patent infringement suits against Google in this Court.[2]

A few months later, Google filed a motion pursuant to 28 U.S.C. § 1404(a) to transfer the cases to the Northern District of California.[3] Google argues that its financial witnesses and key Google employees who worked on the accused functionality are located in the Northern District,

---

[1] A similar motion was filed in all the *Uniloc v. Google* cases, Case Nos. 2:18-cv-491–-493, -496–-497, -499, -501–-504, -548, -550–-553. Although some minor facts differ, the result is the same in every case.

[2] Uniloc filed some of the suits on December 30, 2018. *See* Case Nos. 2:18-cv-548, -550–-553.

[3] Google filed a renewed motion to transfer, which is the present motion, after some targeted discovery.

with the majority of the other witnesses also residing in California. Google further argues that the majority of the evidence is located in the Northern District or is accessible through the cloud.

Uniloc opposes transfer, contending that this District is the proper venue. Uniloc argues that both it and Google have extensive ties to this District and Texas in general. It also argues that this District would be more convenient for non-party witnesses, especially willing witnesses. Finally, Uniloc argues that a denial of transfer could prevent a waste of judicial resources by avoiding the need for the Northern District to restart a series of cases nearing trial.[4]

## II.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a); *see also In re Toyota Motor Corp.*, 747 F.3d 1338, 1339 (Fed. Cir. 2014). "A motion to transfer venue should be granted upon a showing that the transferee venue 'is clearly more convenient' than the venue chosen by the plaintiff." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("*Volkswagen II*")); *see also In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Circ. 2008). The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

Once that threshold is met, courts analyze a number of private and public interest factors. *Id*. (citations omitted). The private factors include: "(1) the relative ease of access to sources of

---

[4] Google's motions to transfer were filed timely but their consideration was delayed by venue discovery and developments in related litigation. The Court notes that, despite an invitation to do so (*see* Dkt. No. 289), Uniloc did not brief the effect of *In re Google LLC*, 949 F.3d 1338 (Fed. Cir. 2020), *reh'g denied*, No. 19-00126 (Fed. Cir. May 15, 2020).

proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id*. (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id*.

The plaintiff's choice of venue is not a factor in this analysis. *Volkswagen II*, 545 F.3d at 314–15. Rather, the plaintiff's choice of venue contributes to the defendant's burden of proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id*. at 315. Furthermore, though the factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive" and no single factor is dispositive. *Id*. (citation omitted).

### III.   ANALYSIS

#### a.   Northern District of California is a Proper Venue

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203 (citation omitted). The parties do not dispute that this action could have been brought in the Northern District of California. The Court therefore assumes that venue would be proper in the Northern District.

#### b.   Private Interest Factors

##### i.   Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in a transfer analysis." *Genentech*, 566 F.3d at 1343 (citation omitted). Under the Fifth Circuit's 100-mile rule,

"[w]hen the distance between an existing venue for trial of a matter and a proposed venue under §1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05.

Google argues that most non-party witnesses likely to be called to testify in this case reside or work in or near the Northern District, including many relevant current and former Fortress employees.[5] Dkt. No. 94 at 10 (citing *id*. at Background § III) (identifying over a dozen potential witnesses in California). On the other hand, Google states that it is not aware of any non-party witnesses who reside or work in the Eastern District. *Id*. (citing *Toyota*, 747 F.3d at 1340; Dkt. No. 94-15 at 56:11–57:12). Google also argues that the Northern District is more convenient for party witnesses as most of the relevant Google and Uniloc witnesses reside in or near the Northern District. *Id*. (citing *id*. at Background §§ I–II; Dkt. No. 94-10 at 15–19).

Uniloc counters that "Google fails to identify any *willing* nonparty witnesses" while Uniloc can identify two non-party witnesses who are willing to travel to this District. Dkt. No. 142 at 11 (citing Palmer Decl.; Burdick Decl.).[6] Further, Uniloc argues its witnesses can provide the information requested from many of the identified non-party witnesses, making their appearance unnecessary. Uniloc also calls into question Google's assertion that the location of Google's party witnesses favors transfer. Finally, Uniloc concedes that while two of its witnesses are based in California, another is based in New Jersey, which is closer to this District than California. Uniloc concludes that, taken as a whole, the convenience of its witnesses does not support transfer as the Uniloc witnesses prefer to testify in this District, Uniloc has an office in this District, and "lodging

---

[5] Fortress Investment Group is a Northern California entity that incorporated and formed both Uniloc and Uniloc's parent, CF Uniloc Holdings LLC, funded Uniloc's patent assertion strategies, and appointed its own employees as officers and board members of Uniloc and CF Uniloc, many of whom reside and work in the Northern District. *Id*. at 6–8 (citations omitted). The parties sharply disagree over Fortress' relevance.

[6] Uniloc only attached exhibits to its Motion briefing in Case No. 2:18-cv-00548. *See, e.g.*, Dkt. No. 114 in the -548 case. However, it stated that the exhibits are identical in each case. *See* Dkt. No. 142 at 1 n.1. Therefore, the Court relies on the exhibits attached in the -548 case but cites to the record in this case as if the exhibits had been attached.

and meals are likely to be significantly less expensive in Marshall than in San Francisco." *Id.* at 12–13 (citing Dkt. No. 142-1; Dkt. No. 142-9 at 59:5–7; Turner Decl. at ¶ 3; Pedersen Decl. at ¶ 2).

Google replies that Uniloc does not dispute that the Northern District is more convenient for the non-party witnesses identified by Google as well as the vast majority of Google and Uniloc witnesses, who are residents of California. It further contends that Uniloc's assertion that it can provide information requested from non-party witnesses is contradicted by Uniloc's own representations throughout venue discovery. Dkt. No. 148 at 1 (citing Dkt. No. 148-2 at 2; Dkt. No. 148-3 at 3; Dkt. No. 94-8 at 118:19–119:14; Dkt. No. 148-4; Dkt. No. 106 at 2–3). Google also argues that while Uniloc submitted declarations stating that two non-party witnesses are willing to travel to this District, it did not address the willingness of the other non-party witnesses identified by Google, many of whom reside in the Northern District. *Id.* (identifying eight other potential non-party witnesses). Google also contends that the non-party witnesses identified by Uniloc either do not reside in this District, have testimony on irrelevant topics, or both. Finally, Google argues that Uniloc has shown only minimal ties to this District, especially as it relates to Uniloc's witnesses.

Google recently filed a supplement confirming its previous assertion that its prior identification of relevant witnesses was accurate. It states "that 13 of the 14 Google witnesses who were deposed [earlier] were located in the Northern District of California; and at least 25 of the 27 Google witnesses who will be deposed in these cases . . . are similarly located in the Northern District of California." Dkt. No. 286 at 2. It goes on to state that the other two Google witnesses as well as two potential Uniloc witnesses are on the West Coast while none are in Texas. Google then argues that the COVID-19 pandemic increases the importance of witness location and

convenience, stating "[t]he logic and purpose of the 100-mile rule has never been more sound and more important than it is today" and that "the 100-mile rule is not simply one of convenience, it is the difference between those witnesses being able to appear for trial or not." *Id*. at 4.

Uniloc responds that Google's supplement should be given no weight since it is "merely a battle of numbers." Dkt. No. 301 at 1 (citing *Frederick v. Advanced Fin. Sols., Inc.*, 558 F. Supp. 2d 699, 704 (E.D. Tex. 2007)). Uniloc argues that the lack of specificity in Google's statement makes it impossible to weigh the convenience of any specific witness in any specific case. For example, Uniloc argues that just because these witnesses are confirmed deponents does not prove they will appear at trial. Further, it argues that, "[i]n a transfer motion, the convenience of expert witnesses means little, if anything to the transfer analysis" since parties can pick their experts, especially a party the size of Google. *Id*. at 2 (citing *Fletcher v. S. Pac. Transp. Co.*, 648 F. Supp. 1400, 1403–04 (E.D. Tex. 1986)) (citations omitted). It also represents that the two people cited in Google's supplement as potential Uniloc witnesses will not be deposed in this case. Finally, Uniloc argues that the COVID-19 pandemic has not made the Northern District more convenient for a host of reasons.

### ii.  Relative Ease of Access to Sources of Proof

When considering the relative ease of access to sources of proof, a court looks to where documentary evidence and physical evidence is stored. *See Volkswagen II*, 545 F.3d at 316. Relevant evidence in patent cases usually comes from the accused infringer and, consequently, the place where the defendant's documents are kept ordinarily does weigh in favor of transfer to that location. *See Genentech*, 566 F.3d at 1345 (citation omitted).

Google argues that "[a] majority of the evidence, including evidence from Uniloc 2017, related Uniloc entities, Fortress, and other third-parties, may come from or favor the Northern

District, where many of these witnesses reside or spend time in California and are likely to have relevant documents." Dkt. No. 94 at 11–12 (citing *id*. at Background §§ I–III). Furthermore, Google argues any evidence from Uniloc in this District is remotely available from anywhere. *Id*. (citing *id*. at Background § II ("Mr. Etchegoyen testified that his emails and other Uniloc documents . . . are stored online in the cloud.")).

Uniloc counters that when considering this factor, a court looks to where documentary evidence is stored regardless of its accessibility. Dkt. No. 142 at 7 (citing *Volkswagen II*, 545 F.3d at 316). Uniloc argues that Google's documents, which are hosted on Google's data servers, are located closer to this District than the Northern District because Google's servers are closer even though it admits neither Texas nor California contained a Google data center when this case was filed. *Id*. (citing Dkt. No. 142-1; Dkt. No. 142-7 at 4). Uniloc also admits that its documents are accessible anywhere but argues that some of its documents are physically located in this District. Finally, Uniloc argues that Google only speculates as to the existence and location of non-party documents, which is not enough to satisfy Google's burden of proof. Furthermore, it argues that most of the so-called non-party information identified by Google is, in fact, party information since Uniloc has access to the requested information.

Google replies that Uniloc does not deny that many sources of proof are in California or the Northern District. Google further contends that even if some documents are in this District, they are on the cloud and thus, conveniently accessed anywhere with an Internet connection. Regardless, Google argues the documents stored in this District are of little relevance to this case. Finally, it states that Uniloc's claim that it can provide the requested non-party information is baseless and the requested information, like the non-parties themselves, is likely in California or even the Northern District.

### iii.  Availability of Compulsory Process to Secure the Attendance of Witnesses

A court may compel a non-party witness to attend depositions or trial within 100 miles of where the person resides, is employed, or regularly transacts business in person. FED. R. CIV. P. 45(c)(1)(A). "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses" than the transferor district. *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 874 (E.D. Tex. 2013). "The fact that the transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly." *Genentech*, 566 F.3d at 1345.

Google argues that many relevant non-party witnesses are in the Northern District or in parts of California where the Northern District has subpoena power, but this District does not. Dkt. No. 94 at 11 (citing *id*. at Background § III & Argument § II.A). Google further states it is not aware of any relevant non-party witnesses who reside or work in this District.

Uniloc responds that Google does not properly identify non-party witnesses under this factor. Uniloc divides the identified non-party witnesses into two groups. The first group, Uniloc argues, contains witnesses who are either part of Uniloc or have information Uniloc could provide itself. Uniloc argues the second group contains witnesses who were cherrypicked by Google because they are in the Northern District but with no real chance of being called at trial, such as prior art inventors. Along these lines, Uniloc argues that "[t]o the extent any weight is given to the individuals in Background § III of Google's motion, similar weight should be given to the individuals in Background § F of this response, who [are mostly in Texas and] are as likely to testify as the 'nonparty' witnesses Google identifies." Dkt. No. 142 at 10–11.

Google replies that Uniloc does not dispute that the Northern District has absolute subpoena power over the non-party witnesses identified by Google. It then argues that Uniloc's assertion that Uniloc has information possessed by the identified non-party witnesses is contradicted by Uniloc's own representations throughout venue discovery. Google also identifies multiple witnesses who it argues reside in the Northern District and contain relevant information not likely to be available to Uniloc. Since it is unclear if they are willing witnesses, Google argues it is better to be in the Northern District, which has subpoena power over them. Google also argues that it regularly calls prior art inventors at trial. Dkt. No. 148 at 2 (citations omitted) (listing cases where Google has called such witnesses at trial).

### iv. All Other Practical Problems that Make Trial of a Case Easy, Expeditious and Inexpensive

Google argues there are no practical problems with transferring this case because this case was still in the early stage of litigation when Google's initial motion to transfer was filed. The fact that multiple cases were filed should not sway this decision as this case is unrelated to the other cases and therefore, the relevant witnesses and documents will likely also be different.

Uniloc responds that practical problems based on judicial economy exist. It argues the Court and parties have invested time into this case and that a transfer will create inefficiency by requiring a new court to familiarize itself with these issues. It also argues that even if this factor is neutral, that would weigh against transfer since Google has the burden of proof

### c. Public Interest Factors

### i. Administrative Difficulties Flowing from Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. A proposed transferee court's "less congested docket" and "[ability] to resolve this dispute more quickly" should be considered. *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336

(Fed. Cir. 2009). In situations where "several relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all of those other factors." *Genentech*, 566 F.3d at 1347.

Google argues this factor is neutral since the time to disposition is about the same for both districts. Dkt. No. 94 at 14 (citing Dkt. Nos. 94-46–94-47).

Uniloc counters that this District's time to trial is shorter than the Northern District's time to trial, making the administrative difficulties flowing from court congestion weigh against transfer. Dkt. No. 142 at 14 (citation omitted).

### ii.   Local Interest in Having Localized Interests Decided at Home

This factor considers the interest of the locality of each venue in having the case resolved there. *See Volkswagen I*, 371 F.3d at 205–06. This consideration is based on the principle that "[j]ury duty is a burden that ought not to be imposed upon the people of a community [that] has no relation to the litigation." *Id.*

Google argues that its activities related to the accused functionality are primarily centered in the Northern District. Dkt. No. 94 at 13 (citing *id*. at Background § I & Argument § II.A). Since Uniloc's allegations call into question "the work and reputation" of engineers responsible for these products as well as Google's reputation, the Northern District's "interest in this case remains strong." *Id*. (quoting *Hoffman-La Roche*, 587 F.3d at 1336) (citations omitted)). Further, multiple non-parties, such as prior art inventors as well as Fortress, call the Northern District home. *Id*. (citing *id*. at Background § III; Dkt. No. 94-34 at 67:9–69:3; Dkt. Nos. 94-37–94-44). Google contrasts this with Uniloc, which Google contends does not transact business under Texas law and is not registered as a business in Texas. *Id*. at 13–14 (citing Dkt. No. 94-2 at ¶ 2). Finally, Google argues neither it nor Uniloc has a connection to this District that could not also be drawn to other

districts, such as Google making its services and products available nationally. *Id*. at 14 (citing *Volkswagen II*, 545 F.3d at 318; *Nintendo*, 589 F.3d at 1198; *TS Tech*, 551 F.3d at 1321).

Uniloc responds that it and its predecessor entities have been in this District for more than a decade while it has no office or employees in the Northern District. It goes on to contend that its general ties to California do not give the Northern District an interest in this case and that this District has at least as much interest in the outcome of this case as the Northern District. It further argues that Google's activities related to the accused product are not primarily centered in the Northern District but instead are provided from Google's data centers, which are closer to this District than the Northern District. Finally, Uniloc distinguishes *Volkswagen II* by arguing that the Dallas Division in that case had an interest because the accident that gave rise to the case occurred there, affecting the residents of that division. Here, however, Google's infringing activity that gives rise to this suit occurs in this District and affects, directly and indirectly, the residents of this District.

### iii.   Familiarity of the Forum with the Law that Will Govern the Case and Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law

The parties agree these factors are neutral as both districts are familiar with and can apply the same federal patent laws to this patent infringement case. *See, e.g.*, Dkt. No. 94 at 14 (citing *TS Tech*, 551 F.3d at 1320).

## IV.   CONCLUSION

The Court has considered all the arguments made by both sides, laying out the most persuasive ones in this Order. Neither party seems to truly contend that sources of proof cannot be easily accessed from either venue. The few documents that are physically present in either district have little relevance. However, keeping the Fifth Circuit's 100-mile rule in mind, Google has shown that far more witnesses in this case, both party and non-party, are in the Northern District

or close to it. This is not just a matter of numbers but also of substance as well. Google's supplement also shows that these identified witnesses are more likely to attend trial, making the need to consider their convenience more important, even without regard to the difficulties posed by the pandemic. Regardless of whether the non-party witnesses would be unwilling to attend trial, which is unclear for most of them, Google has made a credible showing that the Northern District would have subpoena power over many of the identified witnesses pursuant to Rule 45(c). The fact that this decision comes at a relatively late stage provides an unusual degree of certainty about the trial witnesses, in place of the speculation normally necessary. The late stage of this case does itself present some cause for concern. Yet, Google filed this motion in a timely manner early in the case and the delay was due to venue discovery and developments in other related cases, which cannot be attributed to Google.

After consideration, and on the unusual record before it, the Court finds that the Northern District of California is clearly more convenient than this District. It therefore **GRANTS** Google's Motion to Transfer and **ORDERS** that this case be transferred to the Northern District of California.

**SIGNED this 8th day of June, 2020.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE